IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **THOMAS P. LENNON and TERESA LENNON GARDNER,**  Plaintiffs/Counterclaim Defendants,  v.  **SCOTT & STRINGFELLOW, LLC,**  Defendant/Counterclaim Plaintiff,  and  **KATHLEEN LENNON PAMPILLONIA, individually, and in her capacity as Trustee of the Anne Marion Lennon Revocable Trust**,  Counterclaim Defendant. | Civil Action No. **3:10-CV-0003-L** |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' Motion to Remand, filed February 2, 2010. After carefully considering the motion, response, reply, record, and applicable law, the court **grants** Plaintiffs' Motion to Remand.

**I.   Background**

This civil action was originally filed in Probate Court Number 3 of Dallas County, Texas, on December 7, 2009. Plaintiffs Thomas P. Lennon and Theresa Lennon Gardner (collectively, "Plaintiffs") brought claims against Defendant Scott & Stringfellow, LLC ("Defendant" or "S&S"). Plaintiffs filed a request for declaratory relief, an action to recover property, books, records, and papers, and an action for an accounting. They also seek attorney's fees and expenses. The state

**Memorandum Opinion and Order – Page 1**

action was filed pursuant to the probate court's pendent and ancillary jurisdiction and is related to the Estate of Anne Marion Lennon ("Decedent").

Defendant removed the case to this court on January 4, 2010. S&S contends that removal is proper pursuant to 28 U.S.C. § 1441(a). Plaintiffs moved to remand the case to the probate court and argue that the probate exception applies in this case and that there is not diversity jurisdiction. Defendants have filed a counterclaim for interpleader and have moved to dismiss Plaintiffs' claims and for discharge from interpleader. The court extended Plaintiffs' deadline to respond to the motion to dismiss until twenty-one days after ruling on the motion to remand.

## II.     Legal Standard - Subject Matter Jurisdiction

A federal court has subject matter jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *See Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at

the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

In considering a Rule 12(b)(1) motion to dismiss or remand for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.), *cert. denied*, 534 U.S. 1127 (2002); *see also Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Accordingly, if a case is removed to federal court, the defendant has the burden of establishing subject matter jurisdiction.

### III. Discussion

#### A. Procedural Defect

Plaintiffs contend that this case must be remanded to state court because the removal was procedurally defective, as Kathleen Lennon Pampillonia ("Pampillonia") did not consent to the removal. Pampillonia, who is named as a Counterclaim Defendant in this federal action, also filed certain documents in the probate court before it was removed. Plaintiffs contend that this case is

ancillary to the probate proceeding related to Decedent's Estate in state court. They point to the probate docket sheet, which includes two pleadings identified as "adverse actions" filed by Pampillonia. The docket sheet also identifies Pampillonia as a party. Because Plaintiffs assert that Pampillonia is a "party-defendant" to this matter, they contend that removal without her consent was improper. They further argue that the presence of Pampillonia, a Texas resident, in this action prevents removal because of the local or forum defendant rule. Plaintiffs apparently attempt to invoke the rule that removal by an in-state or forum defendant is procedurally defective, even when there is complete diversity. *See In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 391 (5th Cir. 2009).

Defendant contends that Plaintiffs conflate the probate action and this ancillary action and that it is the only defendant in this case. It argues that Plaintiffs brought claims only against S&S in the ancillary proceeding. It asserts that Plaintiffs did not name Pampillonia as a defendant in this case or request any relief from her.

The court agrees with Defendant. A review of the Petition in this case makes clear that Plaintiffs' claims are asserted only against S&S. The Petition clearly states that it is an action between "Contestants" – defined as Plaintiffs – and S&S. Petition ¶ 6.1. Pampillonia is described as a "person interested in this Estate." *Id*. ¶ 2.3. The docket sheet reflects that a citation was only issued as to S&S. Notice of Removal, Ex. 1. Pampillonia has never been served.

The court determines that Plaintiffs have not asserted claims against Pampillonia in this ancillary action that was removed to this court. Moreover, even if she were a defendant, her consent to remove is not necessary because she has not been served. *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1262 (5th Cir. 1988). Because she is not a defendant and has not been "properly joined," the forum-defendant rule does not apply in this case. *In re 1994 Exxon Chem.*

*Fire*, 558 F.3d at 391. Accordingly, Pampillonia did not need to consent to removal, and her presence in the case does not invoke the forum-defendant rule. The court finds that there was no procedural error in the removal of this case.

### B.  Diversity Jurisdiction

Plaintiffs contend that this court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000. They argue that Defendant has failed to provide evidence of the amount in controversy and that it has made conclusory assertions about the amount at issue in this case. In response, S&S has provided the declaration of Theresa J. Manderski, which states that S&S maintains a brokerage account that had a value in excess of $75,000 at time of removal and continues to have a value in excess of $75,000.

The court has reviewed the parties' arguments and the Manderski declaration. It determines that S&S has carried its burden and has shown that the amount in controversy exceeds $75,000. Plaintiffs are citizens of Georgia and Washington, D.C.; Defendant is a citizen of North Carolina. In light of the parties' citizenship and the amount in controversy, the court determines that it has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The court must now determine whether this case falls within the narrow probate exception that would divest it of jurisdiction.

### C.  Probate Exception

#### 1.  Legal Standard

A longstanding limitation on federal jurisdiction is the probate exception, which is a judicially created doctrine. *Marshall v. Marshall*, 547 U.S. 293, 298 (2006). It is an exception "to otherwise proper federal jurisdiction." *Id.* at 308. The probate exception is to be narrowly construed, and in defining its scope, the United States Supreme Court recently held:

**Memorandum Opinion and Order – Page 5**

> [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.* at 311-12. "In determining whether a suit in federal court interferes with state probate proceedings, [the Fifth Circuit] considers whether the plaintiff's claim implicates the validity of the probate proceedings or whether the plaintiff is merely seeking adjudication of a claim between the parties." *Breaux v. Dilsaver*, 254 F.3d 533, 536 (5th Cir. 2001) (citations and internal quotations omitted); *see also Morgan v. Chase Home Finance, L.L.C.*, 306 Fed. App. 49, 53 (5th Cir. 2008).

Plaintiffs contend that the probate exception to federal jurisdiction applies in this case because this action is pendent and ancillary to the probate proceeding regarding Decedent's Estate. They further contend that S&S has possession of personal property, record books, title papers, and other documents that belonged to Decedent and her husband, Thomas Joseph Lennon ("Decedent's Husband"). Plaintiffs argue that their Petition alleges that Pampillonia exercised undue influence on Decedent in an attempt to control her financial affairs, including disposition of her and her husband's assets, which include the S&S accounts. Plaintiffs have alleged that S&S violated duties imposed by the Texas Probate Code and that S&S therefore owes them a complete accounting of the assets it holds. They have asked the court to impose a constructive trust on Estate assets, including the S&S accounts, and they have specifically sought to recover the S&S accounts, books, records, title papers, and other papers and to have them delivered to the registry of the court. Plaintiffs also point out that they seek declaratory relief beyond that sought from S&S, including a declaration that Decedent's Husband's estate must pass according to Florida intestacy laws and that they are entitled to two-thirds of one-half of Decedent's Husband's estate. They also seek a

declaration that Decedent's Estate does not pass to Pampillonia and that S&S must freeze the accounts it holds and deposit them into the registry of the court. Plaintiffs contend that their claims are the essence of probate proceedings.

S&S responds that this suit is primarily a dispute between a brokerage firm and Plaintiffs about a securities account. It contends that scope of the probate exception is quite narrow after *Marshall* and that this case does not fall within it. It argues that the Petition does not seek to probate or annul a will, administer an estate, or dispose of property in the custody of the probate court. Moreover, S&S argues that an action being filed pursuant to the probate court's pendent and ancillary jurisdiction does not necessarily bring it within the probate exception.

Under the probate exception, a federal court is precluded from probating or annulling a will, administering a decedent's estate, and endeavoring to dispose of property that is in the custody of a probate court. *Id.* at 311-12. The court must determine whether the Petition calls upon it to do any of these acts.

### 2. Background

The court will briefly set forth the underlying dispute between Plaintiffs and Pampillonia. The facts set forth come from the Petition and documents filed by Pampillonia and attached to the Notice of Removal. Plaintiffs and Pampillonia are siblings, the children of Decedent and Decedent's Husband. Both parents are now deceased. Plaintiffs contend that Decedent's Husband's true will (the "True Will") was executed in the late 1980s and named Plaintiff Gardner and Pampillonia as coexecutors. Under this will, the bulk of Decedent's Husband's estate was to pass to a testamentary trust for the benefit of Decedent, with Pampillonia as trustee. After Decedent's death, the

testamentary trust was to terminate, and the remainder was to be distributed in equal parts to Plaintiffs and Pampillonia.

Decedent's Husband was involved in a serious accident in 1990. He was seriously injured, and Plaintiffs contend that he suffered dementia and a stroke. Decedent's Husband died in Florida on October 14, 1994. Pampillonia asserts that Decedent's Husband executed another will on September 4, 1990, devising the entire estate to Decedent. Plaintiffs contend that this will is a false will (the "False Will") and that it was never probated in any forum. Plaintiffs allege that the testamentary trust was never established and that Pampillonia and Decedent consumed much of the estate assets without legal authority to do so. They do contend that a trust was established in 1997, which was funded with assets from Decedent's Husband's estate. Plaintiffs allege that assets from the 1997 Trust were used to fund the construction of Pampillonia's home.

Decedent executed a will on January 27, 2002, which is the will at the center of this controversy (the "Contested Will"). Plaintiffs contend that Decedent had significant health problems that affected her mental functions and that before, during, and after the execution of the Contested Will, she suffered from significant mental decline. Plaintiffs allege that Decedent was dependent upon Pampillonia and that Pampillonia kept her mother isolated from her family, including them. They contend that Decedent lacked the sufficient legal capacity to make the Contested Will. They further contend that Pampillonia exercised undue influence on her mother by attempting to direct and control her financial affairs, including the disposition of assets that include the S&S accounts.

Plaintiffs contend that Decedent's Husband's False Will has never been probated and that therefore it could not have conveyed title of any of his assets to Decedent, Pampillonia, or the 1997 Trust. They contend that the intestacy laws of Florida govern the disposition of their father's assets

and that they are each entitled to one-third of one-half of his estate at the time of his death. In the alternative, Plaintiffs assert that their father's True Will should be probated and the court should impose a constructive trust for their benefit.

Pampillonia filed an Application for Probate of Will, Independent Administration, and Issuance of Letters Testamentary on November 29, 2009, seeking to probate the Contested Will. She maintains that Plaintiffs are not beneficiaries of the Contested Will, and that if the Contested Will is declared invalid and unenforceable, Plaintiffs are not beneficiaries of Decedent's earlier will either. She contends that most of Decedent's assets were transferred to the 1997 Trust and are not assets of the probate estate. She asserts that the only assets of the probate estate are Decedent's personal effects, jewelry, and automobile. Plaintiffs have applied to be co-temporary administrators of their mother's estate.

### 3. Analysis

Plaintiffs contend that this case is the essence of probate proceedings and that S&S fails to address relief requested by them that implicates that underlying probate case. S&S contends that this is simply a dispute between it and Plaintiffs over access to certain accounts and that it has no interest or rights in the dispute between siblings regarding their parents' estates.

The Petition clearly requests relief that relates to the probate proceeding. Plaintiffs ask for relief, including declarations that:

> a. Decedent and [Pampillonia] have abandoned any and all rights and claims to any property and assets of Husband or Husband's estate . . . ; Husband's estate, assets, and properties . . . shall pass according to the intestacy laws of Florida . . . ; and [Plaintiffs] are entitled to and shall take full, fee-simple title to, interest in, and possession, custody, and control of at least two-thirds (2/3) of one-half (1/2) of Husband's estate, assets, and properties . . . .

**Memorandum Opinion and Order – Page 9**

> b. Decedent's Estate contains no assets or properties, and no assets or properties pass pursuant to the Contested Will to [Pampillonia] or any other person, and, alternatively, Decedent and [Pampillonia] consumed any and all assets and properties to which Decedent was entitled from Husband's estate; thus, no administration is pending and none is necessary[.]
>
> c. The 1997 Trust contains no assets or properties, and [Pampillonia] as the alleged Successor Trustee of said Trust owns no assets or properties, by virtue of the declarations granted above, and, alternatively, Decedent and/or [Pampillonia] have consumed and diverted any assets or properties ever properly and legally owned by the 1997 Trust.

Petition ¶ 6.2. Plaintiffs also seek relief with respect to S&S, including an order that it immediately freeze any assets it holds on behalf of Decedent, her husband, or the 1997 Trust and deposit or interplead them into the registry of the court. *Id*. ¶ 6.2(d). Plaintiffs seek a full accounting of all the S&S accounts, as well as an accounting of all the assets and properties of Decedent's Husband's estate from the time of his death to the present, Decedent's estate, and the 1997 Trust. *Id*. ¶ 6.2(e). In the alternative, Plaintiffs seek a constructive trust imposed upon Decedent's Husband's estate. *Id*. ¶ 6.2(f). Finally, they seek a declaration that S&S owes them fiduciary duties and that they have the right to bring this action to recover property, books, and records from S&S. *Id*. ¶ 6.2(g)-(h).

Accordingly, much of the relief sought by Plaintiffs relates to Decedent's Estate and the validity of her and her husband's wills. Plaintiffs, however, did not name Pampillonia as a defendant, have not had a citation issued for her, and did not include her in the caption of the Petition or in their filings in this court.[*] While she is an interested party to this dispute, she is not a defendant to Plaintiffs' claims. The court finds, therefore, that it should not consider this requested

---

[*]Pampillonia is included in the caption of this case by Defendant because S&S filed counterclaims against her after the case was removed to this court. Plaintiffs did not include Pampillonia in the Petition caption, and they have not included her in the caption in their filings in this court.

**Memorandum Opinion and Order – Page 10**

relief in determining whether remand is appropriate. The court must consider the petition at the time of removal. *Manguno*, 276 F.3d at 723. While relief relating to the probate proceeding is requested, there is no party to defend against these requests for relief.

Even disregarding the relief sought by Plaintiffs against Pampillonia relating to the administration of Decedent's estate or the validity of the wills, the ultimate question of whether S&S owed fiduciary duties to Plaintiffs is directly tied to the issues raised in the underlying probate case. Plaintiffs assert that they are entitled to bring this action pursuant to sections 230, 232, 233, 233A, and 242 of the Texas Probate Code. Each of these sections relates to the "general powers of personal representative," and sets forth the rights and powers of the executor, administrator, or personal representative of an estate. Whether Plaintiffs have these rights and are therefore owed fiduciary duties by S&S are questions that are directly related to the dispute between the siblings in the probate court and that court's determination of which wills are valid. Because these disputes are ongoing, the risk of interference with the probate court is high. *See, e.g.*, *Breaux*, 254 F.3d at 536 ("Once a will has been probated, the danger of federal interference is abated."). The court finds therefore that Plaintiffs' claims do fall within the probate exception and remand to the probate court is warranted in this case. Plaintiffs' claims relate to the administration of Decedent's estate, contest the validity of wills, and seek to bring property into the probated estate; moreover, the probate case is still proceeding, and the resolution of the siblings' claims will affect what duties are owed by Defendant to Plaintiffs.

### 4. Attorney's Fees

Plaintiffs also seek recovery of their attorney's fees, expenses, and costs. They contend that removal was legally unreasonable and improper. Plaintiffs argue that S&S did not cite any

controlling Fifth Circuit precedent in support of its removal of this case and contend that there are objective facts that demonstrate improper removal. S&S contends that this request should be denied because removal was both reasonable and proper.

Plaintiffs are correct that the court can award attorney's fees under certain circumstances. "[A]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). There is no "automatic entitlement to an award of attorney's fees." *Valdes v. Wal-Mart Stores, Inc.,* 199 F.3d 290, 292 (5th Cir. 2000). In applying section 1447(c), the court must consider "whether the defendant had objectively reasonable grounds to believe the removal was legally proper." *Id.* at 293.

The court determines that Defendant had objectively reasonable grounds for believing that removal was proper. Plaintiffs rely on arguments rejected by the court – including that Pampillionia had to consent to removal and that her presence prevents removal because of the local defendant rule – as "objective facts" to support its request for attorney's fees. The court finds that Defendant's arguments in light of *Marshall* and Fifth Circuit precedent are not objectively unreasonable.

### 5.     Defendant's Counterclaim

S&S also argues that even if the court grants Plaintiffs' Motion to Remand, the court still has jurisdiction over its Counterclaim for Interpleader. It argues that the court has original jurisdiction over its counterclaim pursuant to 28 U.S.C. § 1335. Plaintiffs contend that the probate exception applies to Defendant's counterclaim as well.

The court disagrees with Defendant and determines that the counterclaim should be remanded as well. First, although the statute provides for original jurisdiction of certain interpleader actions, the court finds that this counterclaim – brought by S&S, already a defendant to breach of

fiduciary claims brought by one of the interested parties – is not the sort of original action contemplated by the statute. An interpleader action "allows a stakeholder effectively to avoid a dispute with the claimants while the court determines the proper allocation of the disputed fund." *Tittle v. Enron Corp.*, 463 F.3d 410, 423 (5th Cir. 2006) (citing 7 Charles Alan Wright, Arthur Miller & Mary Kay Kane, Fed. Practice and Proc. § 1702 (3d ed. 2001)). A counterclaim, by its definition, is a claim against an opposing party. Fed. R. Civ. P. 13(a)(1). In this case, there is an ongoing dispute, and Plaintiffs have alleged that S&S has already breached certain fiduciary duties. Defendant cannot invoke this statute by use of the legal legerdemain to create jurisdiction when none existed at the time of removal.

      Second, if the counterclaim had been filed as a separate action in this court, the court would dismiss it for lack of subject matter jurisdiction because of the probate exception. Even if the court interpleads Pampillonia, dismisses S&S, and orders S&S to maintain the accounts under its direction, the same dispute that is pending in the probate court would be before this court. The court cannot determine who is entitled to the S&S accounts without making a determination as to which wills are valid. Accordingly, the court finds that the probate exception extends to Defendant's counterclaim, and it determines that the entire case should be remanded to the state probate court.

## IV.     Conclusion

For the reasons herein stated, the court **determines** that the probate exception to federal jurisdiction applies, and it therefore lacks subject matter jurisdiction to hear this action. Accordingly, the court **grants** Plaintiffs' Motion to Remand and **remands** this case to Probate Court Number 3 of Dallas County, Texas. The clerk shall effect the remand in accordance with the usual procedure. The court **denies** Plaintiffs' request for attorney's fees.

**It is so ordered** this 14th day of May, 2010.

                                             Sam A. Lindsay
                                             United States District Judge